1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UDERA G. LEE,                          No. CIV S-04-1484-WBS-CMK

12              Plaintiff,

13        vs.                               FINDINGS AND RECOMMENDATIONS

14   JO ANNE B. BARNHART,
     Commissioner of Social Security,
15
                Defendant.
16
     _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. §

20   405(g). Pending before the court are plaintiff's motion for judgment on the pleadings (Doc. 8)

21   and defendant's cross-motion for summary judgment (Doc. 10).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

# I. BACKGROUND

Plaintiff applied for disability insurance ("DI") benefits on May 21, 2002, based on disability.  In her applications, plaintiff claims that her impairment began on June 1, 2001.  Plaintiff claims her disability consists of a combination of cirrhosis of the liver with NASH syndrome.   Plaintiff is a United States citizen born February 8, 1953, with a tenth grade education.

Plaintiff's claims were initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on December 11, 2003, before Administrative Law Judge ("ALJ") Laura Speck Havens.

In her March 18, 2004, decision, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in the Social Security Act and is insured for benefits through the date of this decision;

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability;

3. The claimant's liver disease is a severe impairment, based upon the Regulations;

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

6. The claimant retains the residual functional capacity to perform sedentary exertional level work; except perform postural tasks on an occasional basis, sit/stand option and perform simple, repetitive tasks;

7. The claimant is unable to perform any of her past relevant work;

8. Prior to February 8, 2003, the claimant was considered to be a younger individual age 45-49; on February 8, 2003, the claimant turned 50 closely approaching advanced age 50-54;

9. The claimant has a limited education;

10. The claimant has no transferable skills from semi-skilled work previously performed as described in the body of the decision;

11.     The claimant has the residual functional capacity to perform a significant range of sedentary work prior to February 8, 2003;

12.     Prior to February 8, 2003, the claimant retained the exertional capacity to perform sedentary work, and the claimant's age, education, and work experience, Medical-Vocational Rule 201.21, Appendix 2, Subpart P, Regulation No. 4 would direct a conclusion of not disabled; the vocational expert testified that given all of these factors, the claimant could perform a significant number of unskilled, sedentary jobs available in the local economy such as a small parts assembly with 15,000 jobs, and a cashier with 14,000 jobs;

13.     The claimant's capacity for sedentary work is substantially intact and has not been compromised by any non-exertional limitations; accordingly, using the above-cited rules as a framework for decision-making, the claimant was not disabled prior to February 8, 2003;

14.     The claimant was not under a disability at any time prior to February 8, 2003;

15.     As of February 8, 2003, the claimant became a person closely approaching advanced age; using Medical-Vocational Rule 201.00, a findings of disabled is therefore reached as of February 8, 2003, but not before;

16.     The claimant has been under a disability as of February 8, 2003, and not before.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI benefits. After the Appeals Council declined review on June 4, 2004, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's

1   conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th

2   Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the

3   Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See

4   Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

5   administrative findings, or if there is conflicting evidence supporting a particular finding, the

6   finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

7   Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

8   one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas

9   v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

10   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338

11   (9th Cir. 1988).

12

13                                    **III.  DISCUSSION**

14          In her motion for summary judgment, plaintiff argues that the ALJ erred in three

15   ways.  Specifically, plaintiff argues: (1) the ALJ's hypothetical questions to the vocational expert

16   were incomplete; and (2) even assuming the hypothetical questions were proper, the ALJ erred

17   in concluding that plaintiff could perform the alternate jobs identified by the vocational expert;

18   and (3) the ALJ failed to give appropriate weight to the opinion of plaintiff's treating physician,

19   David Henry, M.D.  For reasons which will be made clear below, the court addresses plaintiff's

20   last argument first.

21        A.      **Dr. Henry's Opinion**

22          The weight given to medical opinions depends in part on whether they are

23   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

24   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

25   professional, who has a greater opportunity to know and observe the patient as an individual,

26   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

                                           4

1    (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

2    to the opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4

3    (9th Cir. 1990).

4               In addition to considering its source, to evaluate whether the Commissioner

5    properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

6    in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

7    uncontradicted opinion of a treating or examining medical professional only for "clear and

8    convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831.

9    While a treating professional's opinion generally is accorded superior weight, if it is contradicted

10   by an examining professional's opinion which is supported by different independent clinical

11   findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,

12   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

13   rejected only for "specific and legitimate" reasons supported by substantial evidence.  <u>See</u>

14   <u>Lester</u>, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough

15   summary of the facts and conflicting clinical evidence, states her interpretation of the evidence,

16   and makes a finding.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent

17   specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

18   examining professional.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  The opinion of a non-examining

19   professional, without other evidence, is insufficient to reject the opinion of a treating or

20   examining professional.  <u>See</u> <u>id.</u> at 831.  In any event, the Commissioner need not give weight to

21   any conclusory opinion supported by minimal clinical findings.  <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d

22   1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported

23   opinion); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.

24   / / /

25   / / /

26   / / /

1    With respect to Dr. Henry, the ALJ summarized the record as follows:

2    The claimant's treating OB/GYN physician, David Henry, M.D.,
     completed a Physical Residual Functional Capacity Questionnaire on
3    January 2, 2003.  Dr. Henry reported that the claimant has been under his
     care from November 1981 through June 11, 2002.  The doctor diagnosed
4    the claimant liver disease; cirrhosis.  Dr. Henry noted that the claimant's
     subjective complaints were as follows: chronic dyspnea, fatigue,
5    generalized weakness, and abdominal pain.  The doctor conceded that the
     claimant's severity of pain is moderate to severe.  Dr. Henry wrote that the
6    claimant's physical condition has resulted in depression and anxiety.  Dr.
     Henry noted that the onset of claimant's condition began on June 20,
7    2001.  The doctor opined that the claimant retains the residual functional
     capacity to sit less than 2 hours in an 8-hour workday with a break every
8    30 minutes, stand less than 2 hours in an 8-hour workday with a break
     every 15 minutes, and walk 30 [minutes] with a break every 10 minutes.
9    The claimant should perform competitive lifting and/or carrying.  The
     claimant is limited in her ability to perform simple grasping and fine
10   manipulation using the upper extremities.  The claimant is estimated to be
     absent from work more than 4 times a month.

11

12   Dr. Henry's opinion as to plaintiff's residual functional capacity conflicts with those of two

13   agency examining physicians – Dr. Stone and Dr. Modi – who both opined less restrictive

14   sitting, walking, and standing limitations.  Therefore, to the extent the ALJ rejected Dr. Henry's

15   opinion in favor of the contradictory opinions of Drs. Sone and Modi, the ALJ is required to give

16   specific and legitimate reasons for doing so.   See Lester, 81 F.3d at 830.  The ALJ gave the

17   following rationale as to the weight given to Dr. Henry's opinion:

18   . . . The undersigned accords some weight to the assessment of Dr. Henry,
     as he was the claimant's treating physician.  However, Dr. Henry himself
19   indicated that the claimant was under his care until June 11, 2002, and her
     disability began on June 20, 2001.  Based on Dr. Henry's assessment the
20   claimant does not meet the duration requirement.

21   The question before the court is whether this is a specific and legitimate reason supported by

22   substantial evidence in the record.

23          The court finds the ALJ's rationale troubling.  It appears that the ALJ rejected Dr.

24   Henry's opinion because Dr. Henry's records indicate that plaintiff cannot meet the 12-month

25   duration requirement.  Defendant argues that the ALJ in fact rejected Dr. Henry's opinion

26   because her post-onset treatment was short in duration and infrequent.  Defendant cites Benton v.

1   Barnhart, 331 F.3d 1030 (9th Cir. 2003), and 20 C.F.R. § 404.1527(d)(2) in support of this

2   proposition.  Defendant's argument assumes that, because plaintiff testified at the hearing that

3   she generally only saw Dr. Henry once a year, she must have visited Dr. Henry at most once

4   post-onset.

5           The court, however, has trouble accepting defendant's interpretation of the ALJ's

6   rationale.  The ALJ clearly said "duration requirement."  This appears to refer to the 12-month

7   duration rule for disability.  Had the ALJ referred to the duration of plaintiff's treatment with Dr.

8   Henry, or the frequency of plaintiff's visits with Dr. Henry, defendant's argument would be more

9   persuasive.  Moreover, there is evidence in the record which shows that plaintiff saw Dr. Henry

10  post-onset with greater frequency than defendant's argument assumes.  In particular, treatment

11  notes show that Dr. Henry treated plaintiff on January 8, 2003, and April 8, 2003.  Finally, it

12  would make no sense to use the words "duration requirement" if the ALJ were really referring to

13  the infrequency of plaintiff's post-onset treatment because there is no requirement of a particular

14  number of post-onset visits for plaintiff to meet.  The authorities cited by defendant stand for the

15  proposition that frequency is a factor which goes to weight, but they do not set any bright-line

16  rule for a particular number of visits.

17          While defendant's argument concerning the frequency of plaintiff's post-onset

18  treatment with Dr. Henry may indeed provide a legitimate basis for rejecting Dr. Henry's

19  opinion, it was not the reason stated by the ALJ in this case.  Because it is possible that, on

20  further consideration, the ALJ might conclude that there is, in fact, no good reason to reject Dr.

21  Henry's opinion and, therefore, reach a different conclusion, a remand is appropriate.

22  **B.     Hypothetical Questions**

23          Hypothetical questions posed to a vocational expert must set out all the

24  substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

25  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

26  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

1   has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

2   ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

3   of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

4   must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

5   418, 422-23 (9th Cir. 1988).

6           In this case, it is impossible for the court to address plaintiff's argument. For the

7   hypothetical questions to be proper, they would have to accurately describe plaintiff's condition.

8   As discussed above, the court finds that a remand is appropriate in order for the ALJ to give

9   further consideration to Dr. Henry's opinion.  If, on remand, the ALJ decides to afford additional

10  weight to Dr. Henry's opinion, her finding as to plaintiff's medically determinable condition

11  might also change.  Thus, the hypothetical questions would also have to change.  Until it is

12  known how the ALJ will treat Dr. Henry's opinion on remand, it is impossible to determine

13  whether the hypothetical questions currently in the record are accurate or not.

14          **C.**      **Alternate Jobs**

15          In essence, plaintiff argues that, even if the hypothetical questions posed to the

16  vocational expert were appropriate, the ALJ nonetheless erred in concluding that plaintiff could

17  perform the alternate jobs the expert identified.  The court cannot evaluate this argument either.

18  Because the entire contour of plaintiff's medically determinable limitations may change on

19  remand, the court cannot presently evaluate whether the alternate jobs outlined in this record are

20  even relevant, let alone supported by a record which may change.

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.  Accordingly, the undersigned recommends that:

           1.      Plaintiff's motion for judgment on the pleadings be granted;

           2.      Defendant's cross-motion for summary judgment be denied;

           3.      This matter be remanded for further proceedings consistent with this decision; and

           4.      The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   February 24, 2006.

                                                       _____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE